Baker *v.* Shopmen's Local Union No. 755,
Appellant.

Argued January 5, 1961.   Before JONES, C. J.,
BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN,
JJ.

*Ray J. Schoonhoven,* with him *Philip V. Carter* and *Seyfarth, Shaw, Fairweather and Geraldson,* of the Illinois Bar, and *Gilbert P. High,* and *High, Swartz, Childs and Roberts,* for appellant.

*Philip Salkin,* with him *Pearlstine, Salkin & Hardiman,* for appellant.

*Jerome J. Cooper* and *Edward T. Bresnan,* with them *Wolkin, Sarner & Cooper,* and *Maerz & Bresnan,* for appellees.

OPINION BY MR. JUSTICE EAGEN, March 13, 1961:

This is an action in equity instituted by twenty-five members of the Shopmen's Local No. 755 of the International Association of Bridge, Structural and Ornamental Iron Workers, an affiliate of the American Federation of Labor. The defendants are the Shopmen's Local No. 755 and the plaintiffs' employer, the Link-Belt Company.

The complaint alleges separate causes of action in the alternative: (1) that the defendants conspired to cheat and defraud the plaintiffs of seniority rights to which they were entitled as a result of many years of employment with the Link-Belt Company; (2) that the defendants for illegal purposes deliberately misinterpreted and misapplied the terms of an existing bargaining agreement with respect to seniority status, thereby destroying the plaintiffs' third party beneficiary rights thereunder.

The defendants each filed preliminary objections to the complaint on the grounds, that the court did not have jurisdiction of the subject matter; that the plaintiffs failed to exhaust their internal remedies in

the Shopmen's Local 755, as provided for in its by-laws and constitution; that the plaintiffs were guilty of laches. The court below sustained the objection to the alternative, or second cause of action, ruling that the plaintiffs had no legal standing to sue on the contract in question. The objections to the first cause of action were dismissed. From this order, the defendants filed separate appeals pursuing the jurisdictional objections under the provisions of the Act of March 5, 1925, P.L. 23, §1, 12 PS §672.

The facts, well pleaded in the complaint, which for the purpose of this appeal must be accepted as true, may be summarized as follows: Prior to October 1, 1952, the plaintiffs were all long-time employees of the Link-Belt Company at its Nicetown plant located in Philadelphia and, as such, were members of the United Steel Workers, Local 3824, an affiliate of the Congress of Industrial Organizations. This Local 3824 represented the production and maintenance employees at this plant. On or about November 1, 1952, the Link-Belt Company opened and began the operation of a new plant at Colmar, Montgomery County, Pennsylvania. Between October 1, 1952, and November 1, 1952, the Link-Belt Company hired employees at the Colmar plant, who had never been employed by the company previously. During this period, the plaintiffs and other employees at the Nicetown plant requested transfers to the Colmar plant, which were denied. As of June 1, 1953, a majority of the employees at the Colmar plant were new employees and, on this date in a representative election, the defendant, Shopmen's Local 755 (AFL), was certified as the bargaining agent of the production and maintenance employees. Shortly thereafter, the plaintiffs, with the understanding that their seniority rights would be protected, were all transferred from Nicetown to Colmar.

Subsequently, on September 15, 1953, defendant-Shopmen's Local 755 and defendant-employer negotiated a collective bargaining contract, which provided that all employees, who were hired at Colmar prior to the date of the transfer of the plaintiffs to Colmar, were to have seniority over the plaintiffs for purposes of discharge, layoff, demotion, job classification and promotion. In other words, seniority was dependent upon the date of hire at the Colmar plant. These same seniority provisions were reincorporated into subsequent bargaining contracts executed on September 15, 1955, September 16, 1957 and September 16, 1959.

It is charged, that such contractual provisions were demanded and instigated by the defendant-Shopmen's Local 755, over the protests of the plaintiffs, for the purpose of obtaining and maintaining its position as the certified bargaining agent of the employees at the Colmar plant and was, in effect, the fulfillment of a campaign pledge made during the representative election; that this action preferred one group of employees over another, the preferred group being those who had voted in favor of the AFL affiliate in the election; and, that such conduct was discriminatory, arbitrary and capricious, and constituted a breach of fair dealing and good faith on the part of the Shopmen's Local 755. The employer is alleged to have conspired with Shopmen's Local 755, having full knowledge of its purposes and deliberating delaying the transfer of the plaintiffs to Colmar until after the representative election had taken place.

It is further alleged that the plaintiffs have been informed by officers of the Shopmen's Local 755 and a representative of the international association, with which Local 755 is affiliated, that there are no remedies provided for or available to the plaintiffs within the by-laws and the constitution.

An order is requested directing that the plaintiffs be reinstated to their seniority position; that the defendants pay damages for layoffs, demotions, reductions in rates of pay and changes in job classification due to discrimination, and such other relief as may be equitable.

The dispositive question before us is one of jurisdiction. With the merits of the controversy, we are not now concerned. We must resolve whether exclusive jurisdiction over the subject is vested in the National Labor Relations Board, under the Labor Management Relations Act of 1947 (Taft-Hartley Act), 61 Stat. 136 et seq., 29 U.S.C.A. §§141 et seq., on the ground that the plaintiffs are, in effect, charging the defendants with having committed an unfair labor practice within the meaning of that Act of Congress of the United States. If the conduct complained of is regulated, prohibited or protected, by the National Labor Relations Act, then Congress has pre-empted jurisdiction in the Federal Agency, and the state courts must defer thereto: *Garner v. Teamsters C. & H. Local Union,* 346 U.S. 485, 74 S. Ct. 161 (1953).

Section 8, 29 U.S.C.A. §158, of the Taft-Hartley Act, inter alia, defines the following to constitute unfair labor practices: (1) For the employer to interfere with or dominate the formation or administration of a union, (a)(2); (2) For a labor organization or its agents to cause an employer to discriminate against an employee with respect to a condition of employment which encourages or discourages union membership, (b)(2); (3) For the employer by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization (a)(3); (4) For a labor organization or its agents to restrain or coerce an employee in the exercise of rights affirmed in Section 7, 29 U.S.C.A. §157, one

of which is the right to form, join, or assist, a union of his own choice, (b)(1)(a). Section 10(a), 29 U.S.C.A. §160(a), of the same act gives the NLRB, the jurisdiction and power to prevent such unfair labor practices in industries affecting interstate commerce and empowers the board to grant indicated relief. Admittedly, Link-Belt Company is engaged in interstate commerce. It is now clearly established that, if the activity complained of is arguably subject to Section 7 or 8, then exclusive jurisdiction is in the NLRB and the grievances are not subject to litigation in the tribunals of the state or the federal courts: *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959); *Wax v. International Mailers Union,* 400 Pa. 173, 161 A. 2d 603 (1960).

In the instant case, the plaintiffs charge the defendants with conspiracy and activities to injure their *employment status* through deprivation of seniority rights. Call it discrimination, a breach of duty, unfair dealing, or by any other name, that is the basic element of the cause stated. Relief and damages are sought for an alleged unlawful interference by the union and the employer with rights the plaintiffs are entitled to as *employees.* This is an unfair labor practice: *Wax v. International Mailers Union,* supra. This conclusion is further supported by the specific allegations in paragraphs 15 and 16 of the complaint. This type of activity is at least arguably, if not more, subject to Section 7 or 8 of the Act, in violation thereof, and within the protection of Section 10: *Holman v. Industrial Stamping and Mfg. Co.,* 344 Mich. 235, 74 N.W. 2d 322, 29 Labor Cases 69, 651 (1955); *McNish v. American Brass Co.,* 139 Conn. 44, 89 A. 2d 566, cert. den. 344 U.S. 913 (1953); *NLRB v. Wheland Co.,* 271 F. 2d 122 (C.A. 6, 1959); *NLRB v. Dallas General Drivers, Local 745,* 228 F.

2d 702 (C.A. 5, 1956). This being so, jurisdiction in the state courts is ousted, unless and until there is a subsequent determination by the NLRB, stating that such activity is not within the protection of its domain. There can be no duplication of remedies. A conflict of authority and in administration would result. Congress has entrusted responsibility in this area to an administrative agency, the NLRB, equipped with specialized and expert staff facilities to properly entertain such problems and to effectuate the intent of Congress and a national labor policy: *Garner v. Teamsters C. & H. Local Union,* supra. This is true even though non-violent tortious conduct redressable under state law could possibly be involved, such as a tort involving the interference with employment. If unfair labor practices are also present, the federal power is controlling and superseding. "Controlling and therefore superseding federal power cannot be curtailed by the state even though the ground of intervention be different than that on which federal supremacy has been exercised": *Weber v. Anheuser-Busch, Inc.,* 348 U.S. 468, 480, 75 S. Ct. 480, 99 L. Ed. 546 (1955).

The argument of plaintiffs that the Labor-Management Reporting and Disclosure Act of 1959, P.L. 86-257, 73 Stat. 519, enlarges state court jurisdiction, even though fair labor practices are involved, is not persuasive. The very section of the act urged in support of his position states that it is not intended to impair, or otherwise affect, the rights of any person under the National Labor Relations Act. One of the "rights" as enunciated by the U.S. Supreme Court is to have uniform application of the law by the "expert" body created to enforce it, namely, the NLRB.

In view of the foregoing, it is unnecessary to discuss the other questions raised by these appeals.

We, therefore, conclude that jurisdiction in this matter is in the NLRB. Jurisdiction of the state courts must yield thereto.

The order of the lower court is reversed. The record is remanded with direction to dismiss the complaint. Each party to pay own costs.