## Smith, Appellant, *v.* Pittsburgh Gage and Supply Company.

Argued March 27, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Donald E. Rohall,* for appellants.

*John G. Wayman,* with him *Leonard L. Scheinholtz,* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, October 9, 1963:

On this appeal the issue is narrow; whether a state court has jurisdiction to entertain this action of trespass wherein discharged employees, alleging that they were discharged from their employment by reason of a conspiracy between their union and employer, seek of the union and the employer reinstatement to employment and pecuniary damages.

Karl Smith, James Reed, Joseph Wachtre and Ed Owens (Employees), instituted a trespass action, in the nature of a trespass on the case for conspiracy, in the Court of Common Pleas of Allegheny County against Pittsburgh Gage and Supply Company (Employer), and Steam Fitters Local Union No. 449 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (Union). The Employees' complaint alleged that: (1) they had been Employees of the Employer and members of the Union, the collective bargaining agent; (2) in February, 1960, the Employer and the Union demanded that they withdraw from the Union; (3) upon their refusal to withdraw from the Union, both the Employer and the Union threatened them with reprisals; (4) as a result of a conspiracy between the Employer and the Union, they were discharged from employment; (5) the assigned ground for their discharge was the lack of available work, although at or about the same time the Employer hired other persons to do the identical work the Employees had previously performed; (6) that, by reason of the wrongful discharge pecuniary damages were suffered. Threefold relief was sought: (a) reinstatement to their jobs, (b) the actual damages suffered and (c) punitive damages.

By way of preliminary objections, the Employer challenged the jurisdiction of the state court to entertain this action upon the ground that, assuming the verity of the facts set forth in the complaint, such facts arguably constituted unfair labor practices under the provisions of the National Labor Relations Act[1] (Act), and that the exclusive jurisdiction of the cause of action was vested in the National Labor Relations Board

---

[1] Act of July 5, 1935, c. 372, 49 Stat. 449, as amended, 29 U.S.C. §151.

(Board).[2] In preliminary objections, the Union requested a more specific complaint. The court sustained the Employer's preliminary objections and dismissed the complaint as to both the Union and Employer. From that order this appeal was taken.

In support of their position, the Employees contend: (1) that, since this action is based upon a tortious interference with a contractual relationship, the state court, not the Board, has jurisdiction; (2) that, since the existence of the conspiracy was not discovered until after six months had elapsed, by which time the Employees' right to go to the Board had expired,[3] the Employees will be without a remedy if the state court has no jurisdiction. In support of its position, the Employer contends: (1) that the gravamen of the charges embodied in the complaint arguably, at least, constitutes an activity subject to the protections of Section 7 or to the prohibitions of Section 8 of the Act and, therefore, only the Board and not a state court has jurisdiction; (2) the failure of the Employees to comply with the statute of limitations in the Act does not vest jurisdiction in the state court.

The basic rule delineating jurisdiction in this area of the law was recently reiterated by the United States Supreme Court in *Local 100 v. Borden,* 373 U.S. 690, 693, 83 S. Ct. 1423, 1425: "This Court held in San Diego Building Trades Council v. Garmon, 359 U.S. 236, [79 S. Ct. 773], that in the absence of an overriding state interest such as that involved in the maintenance of

[2] The preliminary objections also set forth that Smith, one of Employees, had filed two unfair labor charges with the Board against the Union and the Employer; the first charge was withdrawn by Smith and the second charge was dismissed for lack of evidence by the Regional Director of the Board.

[3] Act of 1935, supra, as amended, 29 U.S.C. §160(b). This provision is a statute of limitations and not a rule of evidence: *N.L.R.B. v. Clausen,* 188 F. 2d 439, cert. den. 342 U.S. 868, 72 S. Ct. 108.

domestic peace, state courts must defer to the exclusive competence of the National Labor Relations Board in cases in which the activity that is the subject matter of the litigation is arguably subject to the protections of §7 or the prohibitions of §8 of the National Labor Relations Act." The rationale of that rule is clear: in its promulgation of rules governing the relations of labor and management as such affect interstate commerce,[4] "Congress did not merely lay down a substantive rule of law to be enforced by *any* tribunal competent to apply law generally to the parties. It went on to confide *primary* interpretation and application of its rules to *a specific and specially constituted* tribunal [the National Labor Relations Board]. . . . Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law." (Emphasis supplied) : *Garner v. Teamsters, Chauffeurs and Helpers,* 346 U.S. 485, 490, 491, 74 S. Ct. 161, 165, 166. In *San Diego Building Trades Council v. Garmon,* supra, Mr. Justice FRANKFURTER (79 S. Ct. 778) stated: "In determining the extent to which state regulations must yield to subordinating federal authority, [the Court has] been concerned with delimiting areas of potential conflict; potential conflict of rules of law, of remedy, and of administration" and that "[w]hen the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of indus-

---

[4] As in *Borden,* supra, the Employees do not challenge "the existence of the requisite effect on [interstate] commerce to bring the matter within the scope of the Board's jurisdiction."

trial relations, it has been judicially necessary to preclude the States from acting. [citing cases]."

The U. S. Supreme Court has established a yardstick for determining when "due regard for the federal enactment requires that state jurisdiction must yield", i.e., "when an activity is *arguably* subject to §7 or §8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.": (emphasis supplied). *Garmon*, supra, 79 S. Ct. 780. See also: *Marine Eng. Ben. Association v. Interlake Steamship Co.*, 370 U.S. 173, 82 S. Ct. 1237.

To the general rule defining jurisdiction, the U. S. Supreme Court has recognized exceptions in the case of certain activities, even though such activities are arguably, or even concededly, within the protections of §7 or the prohibitions of §8 of the Act. As examples, the *Garmon* rule has been held inapplicable or irrelevant (a) where the activity consists of "conduct marked by violence and imminent threats to the public order" (*United Construction Workers v. Laburnum Construction Corp.*, 347 U.S. 656, 74 S. Ct. 833; *United Automobile Workers v. Russell*, 356 U.S. 634, 78 S. Ct. 932); (b) where actions are brought on collective bargaining contracts under §§301, 303 of the Labor Management Relations Act of 1947,[5] even though arguably, or even concededly, unfair labor practices are involved therein (*Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S. Ct. 519; *Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 82 S. Ct. 571; *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S. Ct. 1318; *Smith v. Evening News Association*, 371 U.S. 195, 83 S. Ct. 267); (c) where "the lawsuit [is] focused on purely internal union matters, i.e., on relations between the individual plaintiff and the union not having to do directly with matters of

---

[5] Act of June 23, 1947, c. 120 et seq., 61 Stat. 136, 29 U.S.C. §141 et seq.

employment and . . . the principal relief sought [is] restoration of union membership rights."[6]  (*International Association of Machinists v. Gonzales,* 356 U.S. 617, 78 S. Ct. 923).[7]

In the case at bar, it is evident that the tortious act of conspiracy does not fall within any of the excepted activities.  For example, the instant situation does not fall within the *Gonzales* exception because the crux of the Employees' complaint is not "injury to the *union member* relationship, as it was in Gonzales, but rather injury to [the Employees'] *employment* relationship" by reason of the discharge from employment allegedly due to the Union-Employer conspiracy.  See: *Wax v. International Mailers Union,* 400 Pa. 173, 181, 161 A. 2d 603.

Therefore, unless the activity of which the Employees complain is, beyond argument, outside the orbit of the activities protected by §7 or prohibited under §8, then under the *Garmon* rule the state court has no jurisdiction of the cause of action set forth in the Employees' complaint.  Section 7 protects employees in the "right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . ." (Act, supra, 49 Stat. 452, 29 U.S.C. §157).  Section 8 provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]" (Section 8(a)(1), 29 U.S.C. §158) or "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization" (Sec-

---

[6] As *Gonzales* is analyzed in *Borden,* supra, 83 S. Ct. 1427.

[7] For other examples see:  *Weber v. Anheuser-Busch, Inc.,* 348 U.S. 468, 476, 75 S. Ct. 480, 486.

tion 8(a)(3), 29 U.S.C. §158) and Section 8 further provides that it is an unfair labor practice for a labor organization or its agents to "restrain or coerce . . . employees in the exercise of the rights guaranteed in [Section 7]" (Section 8(b)(1), 29 U.S.C. §158) or *"to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3)"* (Section 8(b)(2), 29 U.S.C. §158).

An examination of the Employees' complaint reveals that the activity charged is a conspiracy between the Union and the Employer to effectuate the discharge of the Employees unless they withdrew from the Union; not only arguably, but clearly, such conduct constitutes an activity within the protection of Section 7 and the prohibitions of Section 8 of the Act.

In *Baker v. Shopmen's Local Union No. 755,* 403 Pa. 31, 168 A. 2d 340, this Court was presented with a situation wherein certain Employees—union members—instituted an equity action in which they charged that the defendants, the Union and the Employer, had conspired to cheat and defraud the Employees of certain seniority rights. In concluding that exclusive jurisdiction of the matter was in the National Labor Relations Board and not the state court, Mr. Justice EAGEN, speaking for the Court, stated (p. 36): "In the instant case, the [Employees] charge the [Union and the Employer] with conspiracy and activities to injure their *employment* status through deprivation of seniority rights. Call it discrimination, a breach of duty, unfair dealing, or by any other name, that is the basic element of the cause stated. Relief and damages are sought for an alleged unlawful interference by the union and the employer with rights the [employees] are entitled to as *employees.* This is an unfair labor practice: Wax v. International Mailers Union, supra. This conclusion is further supported by the specific allegations . . . of the complaint. This type of activity

is at least arguably, if not more, subject to Section 7 or 8 of the Act, in violation thereof, and within the protection of Section 10: [citing cases]." *Baker* clearly is apposite to the instant factual situation. See also: *Terrizzi Beverage Co. v. Local 830,* 408 Pa. 380, 184 A. 2d 243; *Smith's Transfer Corp. v. Voice of Teamsters,* 409 Pa. 217, 185 A. 2d 563; *Gallogly v. Bakery & Confectionery Workers,* 180 F. Supp. 778.

The Employees rely upon *Benjamin v. Foidl,* 379 Pa. 540, 109 A. 2d 300. *Foidl* was decided prior to *Garmon* and, in view of the present rulings of the U. S. Supreme Court, *Foidl* can no longer be regarded as an authoritative precedent.

The Employees' final contention is that, since they had no knowledge of the Union-Employer conspiracy until after the passage of the time within which charges must be filed with the Board under the Act, they now have no right to resort to the Board and the state court, under the circumstances, should assume jurisdiction. The Congress has seen fit to place *exclusive* jurisdiction in this field of litigation in the Board. If relief from the impact upon the Employees of the statutory period of limitations for the filing of charges with the Board is to be afforded, such relief can come only from the Board. That the Employees' resort to the Board for the determination of their charges against the Union and the Employer is now barred cannot create jurisdiction in state courts where none, under the Congressional will, exists. The Employees' contention that the state court should *assume* jurisdiction under the circumstances is without merit.

The exclusive jurisdiction to determine this matter is in the Board and the state courts must yield to the federal preemption in this area of the law.

Order affirmed. Employees pay costs.