401 A.2d 1194

**William SCHENA and Raymond Serafini,**

v.

**Lester SMILEY, Jr., and International Union of Operating Engineers, Local No. 66, A, B, C, AFL–CIO, Appellants.**

Superior Court of Pennsylvania.

Argued April 10, 1978.

Decided April 12, 1979.

Petition for Allowance of Appeal Granted Sept. 10, 1979.

250

Stanford A. Segal, Pittsburgh, for appellants.

William Caprio, III, Williamsport, for appellees.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HE

SPAETH, Judge:

This is an appeal from an order of the lower court dismissing appellants' preliminary objections to appellees' complaint in trespass. The issue is whether the lower court had subject matter jurisdiction over the cause of action alleged or whether its jurisdiction was preempted by virtue of the federal law of labor relations.[1]

In 1969, appellants attempted to organize the employees of Treasure Lake, Inc. During the organizational campaign Treasure Lake discharged a number of employees; appellees were discharged on May 23, 1969, and fourteen other employees were discharged on June 20. On September 4, 1969, appellants filed with the National Labor Relations Board an action claiming that in discharging employees Treasure Lake had committed an unfair labor practice. On September 30, and on several occasions thereafter, appellees asked appellants whether their names had been included in the unfair labor practice action. Appellees allege—and on demurrer we take the allegations as true—that appellants promised them that their names would be included.

The unfair labor practice action was heard by an Administrative Law Judge, who ordered one employee reinstated. On appeal the NLRB ordered thirteen more employees reinstated, and awarded back pay and interest to all fourteen reinstated employees. On January 26, 1972, the United States Court of Appeals for the Third Circuit affirmed. The fourteen employees thus reinstated and awarded back pay were those employees who had been discharged on June 20, 1969. Appellees had in fact not been included in the action, and so were not either reinstated or awarded back pay. By the time appellees discovered that they had not been included in the action, the statute of limitations for filing their

---

1. This court has jurisdiction over the present appeal pursuant to the Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672, which affords an appeal from orders involving questions of jurisdiction. *See McCrory Corp. v. Girard Rubber Corp.*, 225 Pa.Super. 45, 307 A.2d 435 (1973), *aff'd* 459 Pa. 57, 327 A.2d 8 (1974).

own action against Treasure Lake with the NLRB had run.[2] Alleging negligence[3] on the part of appellants in not including their names in the action, appellees brought the present action in trespass, demanding damages of $49,345.00[4] and punitive damages of $98,690.00.

The basis of appellants' jurisdictional preliminary objection to the complaint[5] may be summarized as follows: to recover from appellants, appellees must prove that in discharging them Treasure Lake committed an unfair labor practice;[6] under the National Labor Relations Act, whether an employer has committed an unfair labor practice is a determination exclusively within the jurisdiction of the NLRB; therefore, the lower court lacked subject matter jurisdiction of appellees' complaint. In dismissing appellants' objection[7] the lower court stated:

2. Section 10(b) of the National Labor Relations Act provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." 29 U.S.C.A. § 160(b).

3. The original complaint is unclear. While the basic allegation is that appellants were negligent in not including appellees in the unfair labor practice action, some allegations can be read as pleading fraud or misrepresentation. The amended complaint, while in separate counts, is also unclear.

4. Apparently this amount represents what appellees believe would have been their back pay and interest award if they had been included in the unfair labor practice action.

5. Appellants also filed preliminary objections to the complaint on the ground that appellees had included several causes of action within a single count of the complaint.

6. As mentioned in note 3, *supra*, the original and the amended complaints are capable of being read to allege both negligence and fraud or misrepresentation. Under either theory, however, to recover, appellees would have to prove that in discharging them Treasure Lake had committed an unfair labor practice, and that in an unfair labor practice action against Treasure Lake before the NLRB, appellees would have been awarded damages.

7. While it dismissed the objection to jurisdiction the court did direct appellees to file an amended complaint "setting forth more specifically, and in separate counts, the causes of actions alleged and its [*sic*] relation to each [appellant]." Record at 11a. The amended complaint stated the allegations in separate counts against each appellant.

While it is true that were this a claim to remedy an unfair labor practice, this Court would have no jurisdiction, and while it is further true that in order to recover in this case Plaintiffs must prove an unfair labor practice to establish damages nevertheless, this Court is of the opinion that jurisdiction properly lies here. This in an Action in Trespass seeking recovery for the wilful or negligent conduct of the Defendants, and the alleged loss resulting therefrom. It is not an action to cure an unfair labor practice, although proof of such is an element in the Plaintiffs' case. Defendants admit that it is now impossible for the Plaintiffs to proceed on their own before the NRLB and to obtain their remedy in that manner, although they are within the Statute of Limitations to proceed in the above action. Therefore, the Plaintiffs only possible remedy is as set forth above, and if they are correct in their pleadings, a legally redressible situation exists.

To hold that the Plaintiffs do not now have the right to proceed because an element of their proof involves an unfair labor practice, which in and of itself does not fall within the jurisdiction of this Court, would effectively deny them the right to be heard on their claim. Therefore, this Court is of the opinion that the proof of the unfair labor practice is only important as it bears on the damages sustained by the Plaintiffs in the event they are able to prove liability on the part of the Defendants. The suit itself is not based upon an unfair labor practice, but upon an alleged tortious act by the Defendants over which this Court has jurisdiction. Thus, this Court dismissed Defendants' Preliminary Objections as to jurisdiction. Lower Court Opinion at 2–3.

In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the Supreme Court of the United States established the following rule for determining whether the jurisdiction of a state court has been preempted:

When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. .

359 U.S. at 245, 79 S.Ct. at 780.

Applying this rule here, it is clear that if appellees had brought an unfair labor practice action against Treasure Lake, the action would have been under sections 8(a)(1) or 8(a)(3) of the National Labor Relations Act. *See* 29 U.S.C. § 158(a)(1), (3).[8] Therefore, if in the present case appellees had brought suit against Treasure Lake, either as the only defendant or as co-defendant with appellants, the jurisdiction of the lower court, at least with respect to the liability of Treasure Lake, would be preempted. *See Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). The question is whether appellees have avoided this preemption by bringing their suit not against Treasure Lake but only against appellants. In order to answer this question we must examine the cases applying the rule of *Garmon*. As will be apparent, the rule is not to be applied literally, even in cases where the activities complained of were arguably, or even concededly,

8.  Section 7 of the Act provides:
    Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.
    29 U.S.C.A. § 157.
    Section 8(a)(1) provides that "[i]t shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 [section 7] of this title." 29 U.S.C.A. § 158(a)(1). Section 8(a)(3) provides that "[i]t shall be an unfair labor practice for an employer . . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C.A. § 158(a)(3).

within the protections of section 7 or the prohibitions of section 8 of the Act.

Thus, the rule of *Garmon* has been held not to apply where the action is brought for a violation of a collective bargaining agreement under sections 301 and 303 of the Labor Management Relations Act of 1947,[9] *see Smith v. Evening News Assoc.*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), or where the action is against a union for breach of its statutory duty of fair representation, *see Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).[10] These exceptions, however, do not

**9.** Sections 301 and 303 provide exceptions to the preemption rule and allow actions to be brought in the federal district courts in certain specific situations. Section 301 provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C.A. § 185.

Section 303 provides:

(a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

29 U.S.C.A. § 187.

**10.** In *Vaca* the Supreme Court permitted an action in state court by a union member against his union for breach of the union's statutory duty to represent fairly the members of the collective bargaining unit. The basis of the claim was that the union had arbitrarily and without just cause refused to process the employee's grievance against his employer. The employee also brought a separate action against his employer under section 301 for violation of the terms of the collective bargaining agreement. In concluding that the jurisdiction of the state court was not pre-empted, the Court emphasized the fact that the action for breach of a union's statutory duty of fair representation had been developed by the federal courts and only

help appellees, for the present action does not fit within any of them.[11]

In addition, the rule of *Garmon* has been held not to bar an action where the activity in question is merely a peripheral concern of the Act, or where the action involves an interest so very deeply rooted in the local community that the Court will not infer an intent on the part of Congress to preempt the jurisdiction of the state court. *Sears Roebuck & Co. v. Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978); *Farmer v. Carpenters*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), *Linn v. Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). Cases complaining of violence by a union or its members are perhaps the clearest example, *see United Construction Workers v. Laburnum Constr. Corp.*, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954); *see also Automobile Workers v. Russel*, 356 U.S. 634, 640, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958) (WARREN, C. J., dissenting), but for purposes of decision here, it is especially instructive to consider the reasoning of the Supreme Court in *Sears, Farmer*, and *Linn*, for in those cases the Court held that a state court had jurisdiction of a tort action against a union even though the tort arose in the context of an unfair labor practice.

recently adopted by the NLRB. Thus, the Court concluded, there was no reason for limiting jurisdiction to the NLRB, especially since resolution of the issue could not be said to be better left to the NLRB's expertise. Consistent with this holding, the Court stated that federal law would control the decision in the action and that recovery would only be allowed where the union's conduct toward a member of the collective bargaining unit was arbitrary, discriminatory, or in bad faith. *See Motor Coach Employees v. Lockridge, supra*, at 299, 91 S.Ct. 1909 (must apply federal law; must be fraud, deceitful or arbitrary action, or bad faith conduct).

11. Appellees' action is not based on a breach of a collective bargaining agreement judicially cognizable under section 301. Nor is it within the exception to preemption recognized in *Vaca*, that is, an action involving a breach of the union's statutory duty of good faith and fair representation of its members. Appellees were not members of the union; they have made no argument that the exception of *Vaca* applies in this case; and they have apparently admitted that appellants owed them no statutory duty to process their claim before the NLRB. *See* Complaint ¶ 11, Amended Complaint ¶ 15.

In *Linn* the Supreme Court held that the state court had jurisdiction over a tort action for libel brought by an officer of an employer, even though the alleged libel had occurred in the midst of an organizational campaign and despite the fact that the union that circulated the defamatory statement could have been brought before the NLRB in an action under section 8 to set aside the election. In so holding the Court considered the strong interest of the state in protecting its citizens from libel and also stressed the fact that the decision with respect to the merits of the libel action would not involve a decision of the merits of the unfair labor practice claim. According to the Court:

> Nor should the fact that defamation arises during a labor dispute give the Board exclusive jurisdiction to remedy its consequences. The malicious publication of libelous statements does not in and of itself constitute an unfair labor practice. While the Board might find that an employer or union violated § 8 by deliberately making false statements or that the issuance of malicious statements during an organizing campaign and such a profound effect on the election as to require that it be set aside, it looks only to the coercive or misleading nature of the statements rather than their defamatory quality. The injury that the statement might cause to an individual's reputation—whether he be an employer or union official—has no relevance to the Board's function. *Cf. Amalgamated Utility Workers v. Consolidated Edison Co.*, 309 U.S. 261, 84 L.Ed. 738, 60 S.Ct. 561 (1940). The Board can award no damages, impose no penalty, or give any other relief to the defamed individual.
>
> On the contrary, state remedies have been designed to compensate the victim and enable him to vindicate his reputation. The Board's lack of concern with the "personal" injury caused by malicious libel, together with its inability to provide redress to the maligned party, vitiates the ordinary arguments for pre-emption.

\*　　\*　　\*　　\*　　\*　　\*

Judicial condemnation of the alleged attack on Linn's character would reflect no judgment upon the objectives of the union. It would not interfere with the Board's jurisdiction over the merits of the labor controversy. 383 U.S. at 63–64, 86 S.Ct. at 663–664 (footnote omitted)[12]

Similarly in *Farmer* the Court held that a state court was not preempted from exercising jurisdiction over a cause of action brought by a union member against the union for intentional infliction of emotional distress. In that case the union member had complained about the union's hiring hall practices. He alleged that because of this complaint the union had discriminated against him in hiring hall referrals and had subjected him to a campaign of personal abuse and harassment, causing him severe emotional distress. The Court held that the action for emotional distress would lie. In so holding the Court considered the strong interest of the state in redressing outrageous and emotionally distressing conduct, citing its decision in *Linn*, and noting that in defamation actions and actions arising out of violence by the union, a decision by the state court would not intrude upon the federal scheme since those actions can be adjudicated without regard to the merits of the underlying labor controversy. 430 U.S. at 299–300, 97 S.Ct. at 1065, *citing, Automobile Workers v. Russell, supra,* 356 U.S. at 649, 78 S.Ct. 932. Said the Court:

There is, to be sure, some risk that the state cause of action for infliction of emotional distress will touch on an area of primary federal concern.   .   .   .

Viewed, however, in light of the discrete concerns of the federal scheme and the state tort law, that potential for

12. To ensure that future actions for libel not intrude upon the NLRB's exclusive jurisdiction, the Court in *Linn* held that recovery would be limited to those situations where both damage and malice could be proved. 383 U.S. at 65, 86 S.Ct. 657, *citing, New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The requirement of proof of damage and malice lessens the probability that the state court will award a recovery based merely on the untruthfulness of a per se libelous statement; recovery on this basis might hinder the free and robust exchange of ideas during an organizational campaign. 383 U.S. at 65–66, 86 S.Ct. 657.

interference is insufficient to counterbalance the legitimate and substantial interest of the State in protecting its citizens. If the charges in Hill's complaint were filed with the Board, the focus of any unfair labor practice proceeding would be on whether the statements or conduct on the part of union officials discriminated or threatened discrimination against him in employment referrals for reasons other than failure to pay union dues. See n 11, supra. Whether the statements or conduct of the respondents also caused Hill severe emotional distress and physical injury would play no role in the Board's disposition of the case, and the Board could not award Hill damages for pain, suffering, or medical expenses. Conversely, the state court tort action can be adjudicated without resolution of the "merits" of the underlying labor dispute. Recovery for the tort of emotional distress under California law requires proof that the defendant intentionally engaged in outrageous conduct causing the plaintiff to sustain mental distress. *State Rubbish Collectors Assn. v. Siliznoff*, 38 Cal.2d 330, 240 P.2d 282, 240 P.2d 282 (1952); *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 468 P.2d 216, 86 Cal.Rptr. 88, 468 P.2d 216 (1970). The state court need not consider, much less resolve, whether a union discriminated or threatened to discriminate against an employee in terms of employment opportunities. To the contrary, the tort action can be resolved without reference to any accommodation of the special interests of unions and members in the hiring hall context.

430 U.S. at 303–05, 97 S.Ct. at 1065–1066 (footnotes omitted) [13]

More recently in *Sears* the Court held that the jurisdiction of a state court was not preempted when the action was in trespass against union picketing. Citing *Farmer,* and applying it to the situation before it, the Court stated:

**13.** While concluding that the action for emotional distress would lie, the Court held that the plaintiff was entitled to recovery only upon proof that the conduct was outrageous. 430 U.S. at 305, 98 S.Ct. 230. It also directed the trial court to exercise care to assure that recovery was not excessive. 430 U.S. at 306, 97 S.Ct. 1056.

In the present case, the controversy which Sears might have presented to the Labor Board is not the same as the controversy presented to the state court. If Sears had filed a charge, the federal issue would have been whether the picketing had a recognitional or work reassignment objective; decision of that issue would have entailed relatively complex factual and legal determinations completely unrelated to the simple question whether a trespass had occurred. Conversely, in the state action, Sears only challenged the location of the picketing; whether the picketing had an objective proscribed by federal law was irrelevant to the state claim. Accordingly, permitting the state court to adjudicate Sears' trespass claim would create no realistic risk of interference with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices.

The reasons why pre-emption of state jurisdiction is normally appropriate when union activity is arguably prohibited by federal law plainly do not apply to this situation; they therefore are insufficient to preclude a State from exercising jurisdiction limited to the trespassory aspects of that activity.

436 U.S. at 198, 98 S.Ct. at 1758, 56 L.Ed.2d at 226. (footnote omitted.[14]

14. In holding that the jurisdiction of the state court was not preempted, the Court in *Sears* also focused on the fact that the employer could not have sought direct relief from the NLRB himself for the pickets' trespass. The Court stated:

> The primary jurisdiction rationale unquestionably requires that when the same controversy may be presented to the state court or the NLRB, it must be presented to the Board. But that rationale does not extend to cases in which an employer has no acceptable method of invoking, or inducing the Union to invoke, the jurisdiction of the Board. We are therefore persuaded that the primary jurisdiction rationale does not provide a *sufficient* justification for pre-empting state jurisdiction over arguably protected conduct when the party who could have presented the protection issue to the Board has not done so and the other party to the dispute has no acceptable means of doing so.

> 436 U.S. at 202–203, 98 S.Ct. at 1760, 56 L.Ed.2d at 228–29 (footnotes omitted).

This statement, it should be noted, does not aid appellees here, for they could have brought charges against Treasure Lake before the

■ From this examination of the cases it may be seen that in deciding whether the jurisdiction of the lower court was preempted, it is not enough simply to note that the action is against the union for negligence, and not specifically directed toward the labor relationship between the union, the employer, and the employees.[15] Instead, one must examine the action in the context of the federal scheme. In particular, one must inquire whether the state has a strong interest in redressing the alleged injury, and if it does, whether the state court can adjudicate the action without deciding the merits of the underlying labor controversy, or in other words, without running the risk of interfering with the NLRB's primary jurisdiction to enforce the federal statutory prohibition against unfair labor practices. When this inquiry is made here, it becomes apparent that the jurisdiction of the lower court was preempted.

■ It may be said that a state has a strong interest in redressing an injury negligently inflicted upon one of its citizens. The interest alleged here, however, cannot be regarded as of comparable concern to the state as the interests alleged in *Linn, Farmer,* and *Sears.* Another way of putting this point is to say that the interest alleged here is not as separate from, or independent of, or peripheral to,

NLRB, and thus had an "acceptable method of invoking . . . the jurisdiction of the Board". *Id. Cf. Vaca v. Sipes, supra,* 386 U.S. at 185, 17 L.Ed.2d 842 (discussion of situation where union alone can invoke grievance process under collective bargaining agreement and wrongfully refuses to process grievance).

15. *See Farmer,* where the Court stated:

Although cases like *Linn* and *Russell* involve state law principles with only incidental application to conduct occurring in the course of a labor dispute, it is well settled that the general applicability of a state cause of action is not sufficient to exempt it from pre-emption. "[I]t [has not] mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations." *Garmon,* 359 U.S., at 244, 79 S.Ct. 773, 3 L.Ed.2d 775. Instead, the cases reflect a balanced inquiry into such factors as the nature of the federal and state interests in regulation and the potential for interference with federal regulation.

403 U.S. at 300, 91 S.Ct. at (footnote omitted).

the labor relations aspect of the case as were the interests alleged in *Linn, Farmer,* and *Sears.*

However this may be, the point is not decisive. It may be granted that the cases do not yield a clear definition of what is meant by "a strong state interest." What is decisive, however, is that it is plain that the interest appellees assert is one that could not be adjudicated by the lower court without deciding the merits of the underlying labor controversy. Appellees' entire claim is premised upon their ability to prove, and the lower court's ability to decide, whether, when Treasure Lake discharged appellees, it committed an unfair labor practice that would have been decided in appellees' favor by the NLRB. Therefore, unlike the state courts in *Linn, Farmer,* and *Sears,* the lower court here, if permitted to proceed, would have to reach and resolve the merits of the underlying labor controversy.

To allow the lower court to do this would constitute a plain violation of the federal scheme. The lower court's decision, whether by judge or jury, and any subsequent decision by this court on appeal, would necessarily involve the risk of interpretation and application of the Act in a manner inconsistent with the decision already reached by the NLRB with respect to the fourteen other employees. Suppose, for example, that the lower court were to find that when Treasure Lake discharged appellees, it did not commit an unfair labor practice. At once, the question would arise whether that decision was consistent with the NLRB's decision that when Treasure Lake discharged the fourteen other employees, it did commit an unfair labor practice. Or the supposed case may be turned around, with the same result: if the lower court were to find that appellees had been unfairly discharged, still the question would arise whether that decision was consistent with the NLRB's; appellees were discharged in May, the fourteen other employees in June; the circumstances may have been quite different.

Aggravating this inevitable risk of inconsistency is the fact that the lower court has no expertise in deciding such an issue as whether a discharge represents an unfair labor

practice; nor does this court have such expertise. However, even if the lower court did have such expertise, it would be immaterial. The court's mere act of engaging in the decision making process would violate the preemption principle. In placing jurisdiction within the NLRB, the Congress " 'did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal.' " *Motor Coach Employees v. Lockridge, supra,* 403 U.S. at 286, 91 S.Ct. at 1918, *quoting, Garner v. Teamsters Union,* 346 U.S. 485, 490–91, 74 S.Ct. 161, 98 L.Ed. 228 (1953). The fact that the lower court's decision on the merits of the unfair labor practice charge would not result in the imposition of a remedy against Treasure Lake but against appellants is also immaterial, for in determining whether a court has subject matter jurisdiction, we do not look to the possible result of the specific action but instead to the power of the court to enter upon the inquiry. *See Witney v. Lebanon City,* 369 Pa. 308, 85 A.2d 106 (1952); *Woodward Heating & Air Conditioning Co. v. American Arbitration Ass'n.,* 259 Pa.Super. 460, 393 A.2d 917 (1978).[16]

**16.** In *Witney* the Supreme Court of Pennsylvania explained the approach to be taken in determining the subject matter jurisdiction of a court:

In *Zerbe Township School District v. Thomas,* 353 Pa. 162, 44 A.2d 566, we stated principles which are here applicable, namely that even though a plaintiff have no standing to bring his action, even though his complaint be demurrable, even though he fail to establish its allegations, even though the court should finally conclude that the relief he seeks should not be granted, not any or all of these circumstances would enter into, much less determine, the question whether the court had jurisdiction of the litigation. We there pointed out that the test of jurisdiction was the competency of the court to determine controversies of *the general class* to which the case presented for its consideration belonged,—whether the court had power to *enter upon the inquiry,* not whether it might ultimately decide that it was unable to grant the relief sought *in the particular case*; that the Act of 1925 was not intended to furnish a short cut to a determination of the issues of law or fact raised by the pleadings and that it was not concerned with matters going to the right of the plaintiff to *recover* on his cause of action but only with his right to have his cause of action *heard and determined.*

Finally, certain other aspects of a decision to permit the lower court to proceed may be noted—not as dispositive but as illustrative of the violation of the federal scheme that would ensue. Before the lower court, appellants might be led as defendants to take the position that Treasure Lake did not commit an unfair labor practice with respect to appellees. This position might be inconsistent with appellants' earlier position before the NLRB with respect to the fourteen other employees of Treasure Lake. In addition, an award against appellants would subject the union treasury to a damage claim where the underlying cause of the damages incurred was Treasure Lake.[17]

We recognize that the effect of holding that the lower court did not have subject matter jurisdiction deprives appellees of any remedy with respect to receiving damages they may have suffered because of their discharge by Treasure Lake. That fact, however, does not have the importance assigned to it by the lower court. In the first place, appellees had six months from their discharge in May to bring their own unfair labor practice action before the NLRB,[18] and yet they appear to have done nothing until September, and then to have relied on the union to bring their action, even though they were not members of the union. In the second place, and more fundamental, however, is the principle that a court may not, on the basis of what may seem to it to be equitable considerations, assume jurisdiction. In *Smith v. Pittsburgh Gage & Supply Co.*, 412 Pa. 171, 194

369 Pa. at 311–12, 85 A.2d at 108.

**17.** As noted, in both *Linn* and *Farmer* the Supreme Court cautioned against holding unions liable for excessive damages. *See* notes 12 & 13 *supra*. Moreover, in *Vaca* the Court, noting that to require a union to bear the full responsibility for damages caused by the employer would be a hardship, stated that liability should be apportioned, with "damages attributable solely to the employer's breach of contract . . . not . . . charged to the union." 386 U.S. at 197, 87 S.Ct. at 920. While the facts in *Vaca* were different, the court's concern with having the union bear the damages caused by the employer applies with equal force to this case.

**18.** *See* note 2 *supra*.

A.2d 181 (1963), the Supreme Court of Pennsylvania was met with an argument similar to appellees' argument here. Said the Court:

> The Employees' final contention is that, since they had no knowledge of the Union-Employer conspiracy until after the passage of the time within which charges must be filed with the Board under the Act, they now have no right to resort to the Board and the state court, under the circumstances, should assume jurisdiction. The Congress has seen fit to place *exclusive* jurisdiction in this field of litigation in the Board. If relief from the impact upon the Employees of the statutory period of limitations for the filing of charges with the Board is to be afforded, such relief can come only from the Board. That the Employees' resort to the Board for the determination of their charges against the Union and the Employer is now barred cannot create jurisdiction in state courts where none, under the Congressional will, exists. The Employees' contention that the state court should *assume* jurisdiction under the circumstances is without merit.

412 Pa. at 179, 194 A.2d at 185.

The order of the lower court is reversed and the complaint is dismissed.

CERCONE, President Judge, concurs in result.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision in this case.