420 A.2d 578

Patrick J. BASIAL, Nicholas J. Demas, William A. Donaher, Nick S. Fisfis, John L. Gedid, Margaret K. Krasik, John J. Sciullo and Raymond F. Sekula

v.

DUQUESNE UNIVERSITY OF the HOLY GHOST, a corporation, Henry J. McAnulty and Ronald R. Davenport.

Appeal of DUQUESNE UNIVERSITY OF the HOLY GHOST and Henry J. McAnulty at No. 376.

Appeal of Ronald R. DAVENPORT at No. 377.

Superior Court of Pennsylvania.

Argued April 15, 1980.

Filed May 30, 1980.

356

Paul A. Manion, Pittsburgh, for Duquesne University of Holy Ghost and Henry J. McAnulty.

Daniel H. Shapira, Pittsburgh, for Ronald R. Davenport.

Jack W. Plowman, Pittsburgh, for appellees Basial et al.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellants contend that the lower court erred in dismissing their preliminary objections to appellees' complaint in equity because the court lacked subject matter jurisdiction. We disagree and, accordingly, affirm the order of the court below.

Appellant Ronald R. Davenport is the dean of the law school of appellant Duquesne University of the Holy Ghost (University). In October of 1978, the University's vice president for academic affairs solicited the views of the full–time law school faculty regarding the reappointment of Dean Davenport. Eight of the fourteen faculty members strongly opposed the reappointment.[1] Nonetheless, on January 2, 1979, the University's president, appellant Henry J. McAnulty, reappointed Dean Davenport for a five year term beginning July 1, 1980. Appellees, the eight law school faculty members who opposed the reappointment, then instituted an equity action in the Court of Common Pleas of Allegheny County, seeking, *inter alia*, an injunction directing the University and President McAnulty to revoke the reappointment and to initiate procedures for the appointment of a new dean. Appellees averred that in reappointing Dean Davenport over the opposition of a majority of the faculty members, the University and President McAnulty violated the American Bar Association Standards for Approval of Law Schools (ABA Standards) and the Association of American Law Schools Bylaws (AALS Bylaws) which were incorporated into appellees' University employment contracts.[2] ABA Standard 402(a)(iii) requires law schools to provide "adequate opportunity for effective participation by the faculty in the governance of the law school." Appellees' complaint averred that the ABA has interpreted that stan-

1. Five faculty members strongly favored reappointment, and one supported reappointment with reservations.

2. The employment contract of each appellee contained the following provision: "The Standards of the American Bar Association for Legal Education and the Articles of the Association of American Law Schools, applicable to law schools and law school faculties, shall be in effect and are incorporated by reference."

dard as "mandat[ing] that a dean not be appointed over the objections of a majority of the faculty." The AALS Bylaws provide: "Except in rare cases and for compelling reasons, no decanal or faculty appointment or change in faculty status will be made over the expressed opposition of the faculty (acting as a whole or by a representative portion determined by reasonable criteria)." Art. 6, § 6–1, ¶ 4(c)(iii). Appellees alleged that President McAnulty's action in reappointing Dean Davenport breached each appellee's employment contract and that an equity action was proper because they did not have an adequate remedy at law.

Appellants filed preliminary objections to the complaint, alleging, *inter alia*, that the common pleas court did not have subject matter jurisdiction over this case. In support of their contention, appellants alleged that appellees had agreed in their employment contracts to abide by all of the ABA Standards and AALS Bylaws, including provisions establishing internal procedures for resolving disputes such as this one.[3] Additionally, appellants contended that the

---

**3.** Rule III(4) of the ABA Rules of Procedure for the Approval of Law Schools provides in part:

> Written complaints from faculty . . . at ABA approved schools are received by the Council of the Section of Legal Education and Admissions to the Bar. . . .
>
> If evidence indicates conditions, practices or actions in violation of the [ABA Standards], the Chairperson of the Council may appoint a Hearing Commissioner to visit the institution to obtain additional information and to report to the Council and its Accreditation Committee.
>
> The Council and its Accreditation Committee may then review the matter with notice to all concerned parties. If the Council finds that the school is in violation of the Standards, it may then take appropriate action under provisions of its Standards and Rules of Procedure for Approval of Law Schools for removal of the institution from the list of approved schools.

The AALS Bylaws provide:

> If the Executive Committee finds that a member school has materially failed to comply with the requirements of membership, it shall inform the dean and the chief executive officer of the institution of the deficiency and shall . . . censure the member school or its parent institution or both, place the school on probation, or recommend to the House of Representatives that it take action.

University has a procedure for resolving internal disputes between faculty members and the University.[4]

The lower court denied appellants' preliminary objections, and this appeal followed.

Appellants first contend that the lower court did not have subject matter jurisdiction over this case because appellees' exclusive means for challenging the reinstatement of Dean Davenport was the procedure provided by the ABA Standards, AALS Bylaws, and the University's regulations (non-judicial remedies). Our jurisdiction in this interlocutory appeal is conferred by the Act of March 25, 1925, P.L. 23, § 1, 12 P.S. § 672 (repealed as of June 27, 1980).[5] "Under this section, our scope of review is limited to a single question: did the lower court properly determine whether it had jurisdiction?" *Wechsler v. Newman*, 256 Pa.Super. 81, 87, 389 A.2d 611, 614 (1978). In answering this question, our courts apply the following test:

> In *Zerbe Township School District v. Thomas*, 353 Pa. 162, 44 A.2d 566 [1945], we stated principles which are here applicable, namely that even though a plaintiff have no standing to bring his action, even though his complaint be demurrable, even though he fail to establish its allegations, even though the court should finally conclude that the relief he seeks should not be granted, not any or all of these circumstances would enter into, much less deter-

> ... A member school may appeal to the House of Representatives for review of the action taken by the Executive Committee....
> Art. 7, § 7–2.

**4.** The University's Faculty Senate Grievance Committee "review[s] specific complaints presented by faculty members regarding matters of tenure, academic freedom and other grievances."

**5.** Section 672 provides:
> Wherever in any proceeding at law or in equity the question of jurisdiction over the defendant or of the cause of action for which suit is brought is raised in the court of first instance, it shall be preliminarily determined by the court upon the pleadings or with depositions, as the case may require; and the decision may be appealed to the Supreme Court or the Superior Court, as in cases of final judgments.

mine, the question whether the court had jurisdiction of the litigation. We there pointed out that the test of jurisdiction was the competency of the court to determine controversies of *the general class* to which the case presented for its consideration belonged, whether the court had power to *enter upon the inquiry*, not whether it might ultimately decide that it was unable to grant the relief sought *in the particular case*; that the Act of 1925 was not intended to furnish a short cut to a determination of the issues of law or fact raised by the pleadings and that it was not concerned with matters going to the right of the plaintiff to *recover* on his cause of action but only with his right to have his cause of action *heard and determined.*

*Witney v. Lebanon City*, 369 Pa. 308, 311–12, 85 A.2d 106, 108 (1952) (emphasis in original).

■ In applying this test, our courts have consistently held that a contractual provision requiring the parties to submit their dispute to binding arbitration does not affect the subject matter jurisdiction of the trial court. *See, e. g., Woodward Heating & Air Conditioning Co. v. American Arbitration Association*, 259 Pa.Super. 460, 462–463, 393 A.2d 917, 918–19 (1978); *Wechsler v. Newman, supra*, 256 Pa.Super. at 88, 389 A.2d at 614 (collecting cases). Consequently, without deciding whether, pursuant to their contracts, appellees' nonjudicial remedies were the exclusive means of challenging Dean Davenport's reappointment, we hold that the availability of such remedies could not oust the lower court's subject matter jurisdiction over this case.

Alternatively, appellants contend that the lower court cannot have subject matter jurisdiction until appellees first exhaust their nonjudicial remedies. "Where . . . an administrative remedy is statutorily prescribed the general rule is that a court–be it a court of equity or a court of law–is without jurisdiction to entertain the action." *Lilian v. Commonwealth*, 467 Pa. 15, 18, 354 A.2d 250, 252 (1976). *See* 1 Pa.C.S.A. § 1504. In *Brog v. Commonwealth, Department of Public Welfare*, 43 Pa.Cmwlth. 27, 401 A.2d 613 (1979),

the defendant argued that the plaintiffs' failure to exhaust an administrative remedy provided in Department of Public Welfare regulations deprived the court of subject matter jurisdiction. In upholding defendant's argument, the Commonwealth Court reasoned that although the administrative remedy was not specifically provided by statute, the regulations had been adopted pursuant to statutory mandate and therefore have the force and effect of law.

We need not decide whether appellees were contractually required to exhaust their nonjudicial remedies before instituting this action. Assuming, *arguendo*, that they were so required, we conclude that their failure to exhaust those remedies did not oust the lower court's jurisdiction. Unlike the regulations in *Brog, supra*, the nonjudicial remedies in this case were not adopted pursuant to the mandate of any statute. Moreover, we have stated that "private parties cannot contractually alter the rules of jurisdiction which pertain in this Commonwealth." *Wechsler v. Newman, supra*, 256 Pa.Super. at 90, 389 A.2d at 615. Accordingly, we hold that the lower court had subject matter jurisdiction to entertain this action.[6] Because the only question before us

6. Appellants' reliance upon *Falsetti v. Local Union No. 2026, United Mine Workers of America*, 400 Pa. 145, 161 A.2d 882 (1960), is misplaced. In *Falsetti*, our Supreme Court held that our courts generally will not exercise jurisdiction to review the expulsion of a union member until he exhausts all available internal union remedies. The Court stated that this rule applies to disputes between voluntary unincorporated associations and their members. Subsequent cases have indicated that a jurisdictional question within the meaning of the Act of 1925 arises where a plaintiff fails to exhaust internal union remedies before filing an action in a court of common pleas. *See, e. g., Highway Truck Drivers and Helpers, Local 107 v. Cohen*, 405 Pa. 55, 172 A.2d 824 (1961); *Wax v. International Mailers Union*, 400 Pa. 173, 161 A.2d 603 (1960).

We conclude that *Falsetti* should not be extended to the facts of this case. Unlike the union in *Falsetti*, the University is not a voluntary unincorporated association. Additionally, although, according to appellants, the ABA and AALS are unincorporated associations, those groups are not parties to this dispute. Consequently, *Falsetti* does not govern this case. Were we to extend *Falsetti* by holding that the lower court did not have subject matter jurisdiction because appellees did not exhaust their nonjudicial remedies, we would be permitting a contract between private parties to oust the

on this appeal is whether the lower court had jurisdiction, *Wechsler v. Newman, supra,* we affirm the lower court's order.[7]

Order affirmed and case remanded for further proceedings.

court's jurisdiction. As stated previously, our courts have held that contractual binding arbitration clauses do not affect the trial court's subject matter jurisdiction. *Woodward Heating & Air Conditioning Co. v. American Arbitration Association, supra; Wechsler v. Newman, supra.* It certainly would be anomalous to hold that while a court's subject matter jurisdiction is not ousted where private parties agree to an exclusive internal remedy, its jurisdiction is ousted where the parties have a non exclusive internal remedy.

7. Appellants also contend that (1) because this is an academic dispute, judicial intervention is inappropriate, and (2) to the extent the ABA Standards and AALS Bylaws give appellees a right of action, they are unenforceable because they conflict with the University's regulations. Because these contentions do not raise a jurisdictional question under the Act of 1925, we cannot consider them on this appeal.

The appendix accompanying appellants' brief contains documents which purport to be copies of letters in which the ABA and AALS state that their respective organizations have concluded that President McAnulty did not violate the ABA Standards or AALS Bylaws in reappointing Dean Davenport. Because the dates of those letters indicate that the letters were written after this appeal was filed, and thus were not part of the record below, we cannot consider them. *See, e. g., Commmonwealth v. Casper,* 481 Pa. 143, 392 A.2d 287 (1978); *Greene v. Liebergott,* 235 Pa.Super. 475, 344 A.2d 501 (1975). Because appellants appended to their brief documents which are not part of the record, appellees have filed a petition to quash this appeal or, in the alternative, to suppress appellants' brief and appendix. *See* Pa.R.App. 2101. While we do not condone appellants' conduct in asking us to consider letters which are not part of the record, we conclude that this is not an appropriate case for quashing the appeal or suppressing appellants' brief and appendix. *Compare England Estate,* 414 Pa. 115, 200 A.2d 897 (1964) (petition to suppress supplemental record granted where record consisted entirely of matters not before the lower court). Accordingly, we deny appellees' petition.