423 A.2d 1050

**COMMONWEALTH ex rel. J. J. B.,**

v.

**R. A. McG., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed Dec. 29, 1980.

Louis S. Criden, Philadelphia, for appellant.

Charles W. Craven, Scranton, for Commonwealth, appellee.

Before WICKERSHAM, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

Appellant-mother contends that the lower court improperly awarded the parties joint custody of their minor son less than two weeks after denying appellee-father's petition for a writ of habeas corpus. We are unable, however, to consider the merits of her appeal because the record is incomplete in several critical respects. Accordingly, we vacate the order of the lower court and remand the case for proceedings consistent with this opinion.

The parties' son was born on December 23, 1973. The parties, formerly husband and wife, separated shortly thereafter,[1] and in March, 1974, the lower court awarded custody of the child to the mother. At that time both of the parties resided in or around Scranton. In August, 1977, the lower court amended its previous order, but continued custody in the mother.[2] In May, 1978, the father filed a petition for habeas corpus which the lower court denied in an order dated September 11, 1978.[3] On July 11, 1979, the father filed the petition for a writ of habeas corpus at issue in this appeal. In that petition the father alleged specific changes in circumstances which he claimed warranted either a grant of custody to him alone or to the parties jointly. Among the changed circumstances specified in the petition was the mother's move to Philadelphia to attend law school. The lower court conducted hearings, and on October 24, 1979, denied the father's petition. In an opinion accompanying its order, the court carefully evaluated the evidence presented

1. The parties were divorced sometime in 1977.

2. The record does not specify in what particulars the original order was amended.

3. We affirmed this order without opinion on June 8, 1979.

at the hearings and concluded: "[W]e fail to find that [the father] has proven a substantial change in circumstances affecting the best interests and welfare of this child sufficient to require modification of the prior order" of custody. Nevertheless, twelve days after denying the father's petition, the court entered an order *sua sponte*[4] which read, in pertinent part, as follows:

AND NOW, this 5th day of November, 1979, in consideration of the change of residence of the child to Philadelphia and in consideration of the mandate of *Scott v. Scott*, 240 Pa.Super. 65, 368 A.2d 288 (1976) in cases such as this, the Order of this Court dated October 24, 1979 is hereby vacated sua sponte and the Order dated September 11, 1978 is modified as follows:

1. Joint custody of [J. J. B., Jr.], a minor child, be and is hereby awarded to the child's natural mother, [R. A. McG.], and [J. J. B., Sr.], the child's natural father. Visitation rights as such are hereby vacated and abolished.

The remainder of the order directed the parties to cooperate regarding necessary medical treatment for the child, direct-

4. The father contends that the order of November 5 was not entered *sua sponte*, but rather was the court's response to his petition for reconsideration of the order of October 24. The father states in his brief that on October 26, 1979, he petitioned the court to modify the *terminology used in prior orders to describe the parties' custodial* rights and to modify the visitation schedule. The father further states that opposing counsel was aware of this petition and that the court "ordered both attorneys to submit proposed orders which would clear up the problem raised in the father's Petition for Reconsideration. The child was to remain primarily in his mother's charge, while the time periods the father would have the child would be explicit and undeniable by the mother." Appellee's Brief at 5. The record, however, does not reveal the existence of any petition for reconsideration or proceedings conducted thereon. Moreover, the court made no reference to such petition or proceedings in its order of November 5. Absent evidence of such proceedings in the record, we must conclude that the order of the lower court was, indeed, entered *sua sponte*. "[I]t is black letter law that an appellate court cannot consider anything which is not a part of the record in the case." *McCaffrey v. Pittsburgh Athletic Association*, 448 Pa. 151, 162, 293 A.2d 51, 57 (1972); *see also Basial v. Duquesne University*, 278 Pa.Super. 355, 362 n.7, 420 A.2d 578, 582 n.7 (1980).

ed that the child remain in his present school in Philadelphia, and established a detailed schedule of alternating custody for the weekends and holidays remaining in the academic year and the following summer. The mother has appealed from this order.

"It is settled that the paramount concern in a child custody proceeding is to determine what is in the best interests of the child.... In order to ensure that the best interests of the child will be served, the appellate court will engage in a comprehensive review of the record." *Lewis v. Lewis*, 267 Pa.Super. 235, 239, 406 A.2d 781, 783 (1979) (citations omitted). "So as to facilitate this broad review, we have consistently emphasized that the hearing court must provide us not only with a complete record, ... but with a complete and comprehensive opinion which contains a thorough analysis of the record and specific reasons for the court's ultimate decision." *Garrity v. Garrity*, 268 Pa.Super. 217, 220, 407 A.2d 1323, 1325 (1979) (citations omitted). "Only with the benefit of a full record and full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review.... Where the record is incomplete or the opinion of the lower court is inadequate, the case will be remanded." *Lewis v. Lewis, supra*, 267 Pa.Super. at 240, 406 A.2d at 784. Additionally, courts are reluctant to disturb existing custody arrangements which have satisfactorily served the best interests of the children concerned. *See, e. g., Commonwealth ex rel. Cutler v. Cutler*, 246 Pa.Super. 82, 369 A.2d 821 (1977); *Commonwealth ex rel. Hughes v. Foster*, 225 Pa.Super. 436, 311 A.2d 663 (1973). "[A]ny change in custody must be based upon a showing of a change in conditions." *Commonwealth ex rel. Swanson v. Barry*, 199 Pa.Super. 244, 247, 184 A.2d 370, 372 (1962). *See generally* A. Momjian & N. Perlberger, *Pennsylvania Family Law*, § 5.2 (1978).

In the present case we are lacking critical information to enable us to understand the reasons for and the import of the custody order on appeal because the lower court has failed to submit "a complete and comprehensive opinion

which contains a thorough analysis of the record and specific reasons for the court's ultimate decision." *Garrity v. Garrity, supra,* 268 Pa.Super. at 220, 407 A.2d at 1325. Instead, the court simply cited in its order the mother's move to Philadelphia and our decision in *Scott v. Scott,* 240 Pa.Super. 65, 368 A.2d 288 (1976), as justifications for its decision, without further explanation. Lacking a full opinion setting forth the reasons underlying the court's order, we are unable to determine the import of the order. It is possible that the court, by awarding the parties "joint custody" of their son, intended to effect a qualitative change in the existing custodial and visitational arrangements. It appears equally possible, as the father argues, that the court merely meant to recast the existing arrangements in what it believed was more accurate legal terminology and to revise the father's "visitation" rights in light of the mother's change in residence. In *Scott v. Scott, id.,* cited by the court in support of its order, this Court noted that an arrangement in which one parent is permitted to take possession of his or her child so as to visit the child out of the presence of the other parent "is by definition *partial* custody." *Id.* 240 Pa.Super. at 67, 368 A.2d at 290 (emphasis in original).[5] Such an arrangement could, as in *Scott,* consist of one parent having primary custody, yielding custody to the other parent on alternating weekends.[6] We are unable to determine whether the court intended this latter result, however, absent an opinion in support of its order. Accordingly, on remand the lower court is directed to file a comprehensive opinion which analyzes the record, explains the reasons underlying its November 5, 1979 order, and fully describes the nature and extent of the changes made in the parties' custodial rights. Additionally, the court shall allow the introduction of any other evidence relevant

**5.** We are unsure why the court, if it intended to rephrase the existing custodial arrangements in the terminology employed in *Scott,* ordered "joint custody," rather than "partial custody."

**6.** Such an arrangement is, as Judge SPAETH suggested in his Concurring Opinion in *Scott,* virtually identical to "visitation" as it is ordinarily understood. *See* 240 Pa.Super. at 70 n.1, 368 A.2d at 291 n.1. *See also Pamela J. K. v. Roger D. J.,* 277 Pa.Super. 579, 584 n.3, 419 A.2d 1301, 1304 n.3 (1980).

190

to its determination of how the child's interests would best be served, and shall analyze any such evidence in its opinion. *See Kessler v. Gregory,* 271 Pa.Super. 121, 412 A.2d 605 (1979).

Order vacated and case remanded for proceedings consistent with this opinion. Either party aggrieved by the lower court's ultimate order may take a new appeal to this Court.