476 A.2d 938

**Michael R. HARTMAN, Appellant,**

**v.**

**Dalene K. HARTMAN.**

Superior Court of Pennsylvania.

Argued Jan. 31, 1984.

Filed May 4, 1984.

Stephen B. Lieberman, Reading, for appellant.

Stephen G. Welz, Reading, for appellee.

Before SPAETH, President Judge, and BECK and HOFF-MAN, JJ.

HOFFMAN, Judge:

This appeal concerns the lower court's modification of its earlier custody award. Because we determine that there has not been a change in circumstances sufficient to require a custody modification, we reverse the order of the lower court.

Michael, the child in question, was born on September 27, 1976. The parties separated in August or September of 1979.[1] Michael has resided with appellant, his father, since the separation, and on June 12, 1980, the lower court formally awarded custody to appellant. Custody was maintained with appellant based on subsequent orders dated May, 1982 and September, 1982. Following disruptions in appellee's right to visitation, appellant petitioned to terminate all visitation. Appellee responded with an answer and petition for rehearing. Appellant later withdrew his petition and the lower court, after granting appellee's request for a rehearing, on June 22, 1983 granted appellee custody of the child. This appeal followed.

It is well-established that the sole criterion in child custody decisions is the best interests and welfare of the child. *Commonwealth ex rel. J.J.B. v. R.A.McG.*, 283 Pa. Superior Ct. 185, 423 A.2d 1050 (1980); *Trefsgar v. Trefs-*

---

1. The parties' divorce has yet to be finalized.

*gar,* 261 Pa.Superior Ct. 1, 395 A.2d 273 (1978); *Bender v. Bender,* 261 Pa.Superior Ct. 12, 395 A.2d 279 (1978); *In re Custody of Phillips,* 260 Pa.Superior Ct. 402, 394 A.2d 989 (1978); *Commonwealth ex rel. Cutler v. Cutler,* 246 Pa.Superior Ct. 82, 369 A.2d 821 (1977); Act of June 26, 1895, P.L. 316 § 2, 48 P.S. § 92. Ensuring the child's "physical, intellectual, moral and spiritual well-being" is the focal point of our evaluation of a child's best interests. *Commonwealth ex rel. Cutler v. Cutler, supra,* 246 Pa.Superior Ct. at 85, 369 A.2d at 822. Our scope of review in child custody cases is broad. Although we must accept the lower court's findings of fact that find support in the record, "on those facts we must make such order as our independent judgment persuades us right and justice dictate." *In re Donna W. and Edward W.,* 325 Pa.Superior Ct. 39, 42, 472 A.2d 635, 636 (1984). *See also Commonwealth ex rel. Pierce v. Pierce,* 493 Pa. 292, 426 A.2d 555 (1981) (independent judgment to be exercised in custody cases); *Commonwealth ex rel. Newcomer v. King,* 301 Pa.Superior Ct. 239, 447 A.2d 630 (1982). While we continue to accord weight to the lower court's findings which are premised on a direct assessment of the witnesses' credibility, we are not bound by the lower court's deductions and inferences. *See Commonwealth ex rel. Cutler v. Cutler, supra,* 246 Pa.Super. at 88, 369 A.2d at 823.

In reviewing a child custody modification proceeding we must consider whether

there has been a substantial change in circumstances that would justify a court's reconsideration of the custody disposition.... However, once a substantial change has been established [ (the party seeking modification having the burden of proof) ], both natural parents share equally the burden of demonstrating with which parent the child's best interests will be served.

*Daniel K.D. v. Jan M.H.,* 301 Pa.Superior Ct. 36, 40–42, 446 A.2d 1323, 1324–25 (1982). Because of our reluctance "to disturb existing custody arrangements which have satisfactorily served the best interests of the [child] concerned,

'[a]ny change in custody must be based upon a showing of a [sufficient] change in conditions.' " *Commonwealth ex rel. J.J.B. v. R.A.McG., supra,* 283 Pa.Super. at 188, 423 A.2d at 1052, *quoting Swanson v. Barry,* 199 Pa.Superior Ct. 244, 247, 184 A.2d 370, 372 (1962).

■ The lower court made its custody modification determination after hearing testimony and characterizing appellant's lifestyle as "tentative and unpredictable." (Lower Court Opinion at 23). The court felt that any stability in the child's life up to the time of the hearing resulted "in spite of [appellant's] care, not because of it." (*Id.* at 25). Hence, the court agreed with appellee that there had been a sufficient change in the parties' circumstances to warrant reconsideration of the existing custody order and awarded custody to appellee. In the exercise of our independent judgment, however, we conclude that appellee has failed to demonstrate the required change in circumstances. Thus, contrary to the lower court, we believe that custody of Michael is appropriately maintained with appellant.

The lower court evidently based its decision on appellant's relatively unsettled lifestyle and refusal to abide by the parties' visitation schedule. Because "[w]e need not accept a finding which has no competent evidence to support it," *In re Leskovich,* 253 Pa.Superior Ct. 349, 356, 385 A.2d 373, 376 (1978), we must evaluate the competency of the evidence available to support the lower court's findings.

■ The hearing judge placed a great deal of emphasis on appellant's changes in residence and the child's resulting attendance at several schools within the preceding few years. Changes in residence are not always looked upon with such disfavor. In *In re Leskovich, supra,* the appellant, while acting as custodian of the parties' two children, moved several times, as the result of a job promotion, the sale of the marital residence and a new employment opportunity. Our Court in returning custody to the appellant noted:

> While it is true that appellant experienced a period of unsettled living conditions following her separation from

appellee in 1973, we find that each move was dictated by financial necessity and concern for the welfare of her children. Although this instability led to the enrollment of the children in various schools, appellee admitted that he had not received any reports that the children had not been performing academically. Further, although the lower court concluded that appellant's relocations caused one of the children to suffer from emotional problems, our independent review of the record does not disclose any evidence of a causal connection between the child's emotional problems and appellant's unsettled living conditions.

*In re Leskovich, supra,* 253 Pa.Superior Ct. at 356, 385 A.2d at 376. In *Commonwealth ex rel. Jordan v. Jordan,* 302 Pa.Superior Ct. 421, 448 A.2d 1113 (1982), the mother, who had custody of the child the majority of his life, was found by the lower court to be unstable because she had changed residences three times after the parties' separation. Our Court, in reversing, commented that "such alleged 'instability' was clearly temporary" and noted "that for two years immediately prior to the hearing the mother and child had resided in the same apartment next to the maternal grandmother." *Id.,* 302 Pa.Superior Ct. at 427, 448 A.2d at 1116. We also indicated that "there was no testimony at trial to support an inference that the changes in residence adversely affected the child." *Id. See also Daniel K.D. v. Jan M.H., supra* (several intrastate changes in residence did not adversely affect the child's adjustment).

Our independent review in the instant case leads us to conclude, as in *Leskovich* and *Jordan,* that appellant's moves were made with the child's best interests in mind, did not adversely affect the child and demonstrated only a temporary instability. From the time of the parties' separation, appellant has resided with Michael primarily at appellant's mother's residence. During that time, appellant's father died, resulting in "turmoil in the house", N.T. June 2, 1983 at 56, and as a result, appellant twice moved out with his son, once, for a two-month period and again, for a

two-to-three week period in late 1981. In March, 1982, appellant moved to his current address and has been residing there with Michael ever since. In our judgment, these moves were necessitated by appellant's desire to protect the child from familial conflict, were of a short duration, and only casually disrupted the child's life. Moreover, the record does not indicate that Michael suffered any ill effects from these moves. In fact, the psychiatrist's testimony, which the lower court disregarded, indicated that the real detriment to the child would result from a shift in custody from appellant to appellee at this point. (N.T. June 2, 1983 at 8).

It is true that Michael was enrolled in several day care centers, attended kindergarten at one elementary school, and began first grade at a second. Since March, 1982, however, the child has been enrolled in the same school. The only school-related problem mentioned in the record, that of the child's being reprimanded for fooling around and/or talking in class, appears to have been corrected. As appellant testified, "During the last two or three months, [Michael] has been getting stars all week long without me talking to him or disciplining him in any manner." (N.T. June 2, 1983 at 72).

It is well-settled that in custody modification proceedings we look at the parties' circumstances existing at the time of the hearing. *In re Leskovich, supra,* 253 Pa.Super. at 357, 385 A.2d at 377. *See also Commonwealth ex rel. Jordan v. Jordan, supra* (court noted that the appellant had resided in one place for the two years preceeding the custody modification hearing); *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Superior Ct. 229, 312 A.2d 58 (1973). Moreover, custody cannot reasonably be granted on the basis of a parent's "unsettled past" unless the "past behavior had an ongoing negative effect on the [child's] welfare." *In re Leskovich, supra,* 253 Pa.Super. at 357, 385 A.2d at 377. Since March of 1982, appellant's lifestyle has been sufficiently stable. He has been involved and residing with one woman, Audrey Frankfort,

whom he plans to marry when the parties' divorce is final-
ized.[2] The record reveals that Ms. Frankfort enjoys a close,
loving relationship with Michael and that she willingly un-
dertakes some of the child care responsibilities. Ms. Frank-
fort testified that "I think [Michael] is just—he is real good,
I love him a lot. I think he's a great little boy." (N.T. June
2, 1983 at 102). As mentioned above, Michael is well-settled
in his elementary school and appellant is financially able to
support the child. In our view, therefore, it appears that
the lower court unduly emphasized appellant's "unsettled
past" at the expense of and without sufficient consideration
for his current stability. Hence, finding that the lower
court did not base its decision on competent evidence, we
are not bound by its conclusion.

 The lower court also highlighted the parties' visita-
tion problems in concluding that a change in circumstances
dictated a custody modification. We have stated that
"when a custodial parent so obstructs the visits between the
child and the non-custodial parent that the best interests of
the child are no longer being served, a change of custody is
warranted." *Pamela J.K. v. Roger D.J.*, 277 Pa.Superior
Ct. 579, 593, 419 A.2d 1301, 1309 (1980). Moreover, "a
custodial parent's obstruction of the non-custodial parent's
right to visit the child may ... *serve as the basis* of an
order changing custody." *Id.*, 277 Pa.Superior Ct. at 592–
93, 419 A.2d at 1308–09 (emphasis added). In *Pamela J.K.
v. Roger D.J.*, the appellee, the non-custodial parent, had a
military career and shifted residences between the United
States and abroad. The appellant tried to prevent the
occurrence of four of twelve planned visits from October,
1975 through August, 1978, including Christmas holidays
and for appellee's remarriage. After reviewing the appel-
lant's reasons for obstructing visitation, including emotional
reaction to his ex-wife's remarriage, and a desire to have
the child with him during the holidays, and also noting that

2. Although, according to appellant's own testimony, he has had rela-
tionships with several women in the past few years, we place more
emphasis on appellant's long-term, stable relationship with Ms. Frank-
fort because of our concern with the parties' present circumstances.

only a portion of the visits had been prevented, our Court concluded that "appellant's deliberate obstruction of appellee's right to visit [the child] has not been of sufficient magnitude to justify the removal of [the child] from his household at this time." *Id.*, 277 Pa.Superior Ct. at 594, 419 A.2d at 1309. We strenuously emphasized that:

> [We] do not intend to justify appellant's conduct, but rather only wish to show that mitigating circumstances may have existed that lessen the culpability of his wrongdoing. This is not to say that appellant was not culpable, and he would be foolish indeed to believe that by virtue of our reversal today of the lower court's order he may safely repeat his past actions.

*Id.*, 277 Pa.Superior Ct. at 595, 419 A.2d at 1310. Here, contrary to the lower court's conclusion, but similar to our decision in *Pamela J.K. v. Roger D.J., supra*, we find that appellant's actions have not been so obstructive as to warrant a change in custody on that basis. The record indicates that appellee was unable to exercise her right to visitation on several weekends during the summer of 1982. It appears that Michael was ill on one occasion and car trouble prevented appellant from transporting the child to appellee on another occasion. However, on other weekends appellant, by his own admission, refused to allow the planned visits to occur. Appellant testified that during that period of time appellee had a boyfriend, Rex Bears, with whom Michael did not get along, resulting in Michael's reluctance to spend time with appellee. "[Michael] had stated that he didn't want to go and would hide under the table, behind the furniture so I couldn't get to him to take him out." (N.T. June 2, 1983 at 68). Appellant also testified that appellee was unreceptive to discussing the problem and that because of his inability to ease the situation, his attorney advised him to petition to terminate appellee's right to visitation. Appellant also noted that there were no visitation problems prior to appellee's involvement with Mr. Bears and that since the summer of 1982 and appellee's break up with Mr. Bears, visitation has progressed quite

smoothly. (N.T. June 2, 1983 at 69). While we do not condone appellant's behavior and unilateral decision to disrupt the visitation schedule, we do not find his actions so disruptive and unreasonable as to affect our custody determination. Appellant, unable to solve the problem, and faced with a distraught child, presumably acted in his child's best interests. Moreover, appellant did not stop all visits; in fact, although several weekend visits were cancelled, appellee did have Michael for a week in both July and August of 1982. Accordingly, we do not find appellant's action sufficiently obstructive to require a modification of the original custody award.

The hearing judge also believed a change of custody was necessitated because appellee has more time to devote to Michael than does appellant. The record demonstrates that because appellee can choose her own work shift she is able to pick the child up at school and spend the rest of the evening with him. Appellant, however, returns home from work at 6:30 p.m., and spends several hours with Michael before the child's bedtime. However, Audrey Frankfort, with whom appellant resides, returns home from her job a short while before Michael comes home from school and takes care of him until appellant returns. While the exact number of hours that each parent is able to spend with Michael differs, the record does not demonstrate that appellant's schedule has adversely affected the child. And although the lower court believed that appellee was better able to help Michael with his homework and provide him with a spiritual upbringing, these beliefs are supported in the record only by a few comments made by the child.[3] The record indicates to us that appellant is quite concerned with Michael's progress in school and with the need for discipline in the proper situation. (N.T. June 2, 1983 at 96). Moreover, there is no evidence, apart from a relatively insignifi-

---

**3.** Michael expressed no preference in favor of residing with either parent. If, however, Michael had expressed a desire to stay with a particular parent, this fact, while to be considered, would not be controlling. *See Commonwealth ex rel. E.H.T. v. R.E.T.,* 285 Pa.Superior Ct. 444, 427 A.2d 1370 (1981).

cant difference in salary that one parent's ability to provide material advantages is significantly better than the other's. We feel that the lower court erroneously placed its emphasis on work schedules and the like, and failed to thoroughly consider the effect a change in custody would have on Michael.

"This court has long recognized that the removal of a young child from his environment is a factor which bears on its emotional well-being... Therefore, continued residence of children with one parent may be controlling." *Hugo v. Hugo*, 288 Pa.Superior Ct. 1, 6, 430 A.2d 1183, 1185 (1981). "Above the age of two, children become strongly attached to those who stand in a parental relationship and who have tenderly cared for them. 'Bonds of affection may become so strong that to sunder them suddenly may result not only in the child's unhappiness, but also in its physical injury....'" *Commonwealth ex rel. Cutler v. Cutler*, 246 Pa.Superior Ct. 82, 88, 369 A.2d 821, 824 (1977), *quoting Commonwealth ex rel. Kraus v. Kraus*, 185 Pa.Superior Ct. 167, 175, 138 A.2d 225, 229 (1958). *See also Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 66 A.2d 300 (1949); *Daniel K.D. v. Jan M.H., supra; In re Custody of Phillips, supra*, 260 Pa.Super. at 408, 394 A.2d at 992 ("The son's life with his father has been co-extensive in time with this litigation ... over this substantial period of time attachments to family and environment have developed which it would almost certainly be a traumatic experience for the boy to sever."). Finally, "where the child's parents are equally fit, or nearly so, ... the fact that a stable, long-continued and happy relationship has developed between the child and one of the parents may be of critical importance to the formulation of an appropriate custody decree." *Pamela J.K. v. Roger D.J., supra*, 277 Pa.Super. at 590, 419 A.2d at 1307.

The lower court made brief mention of the effects of a change in custody:

> In our opinion, [a change] will have no adverse effect, but instead be beneficial. Michael will have a more routine

and stable environment. He loves both parents and is acquainted with each home. He really hasn't been in one place for an appreciable period of time to reasonably conclude that he will be detrimentally uprooted.

(Lower Court Opinion at 24). Contrary to the lower court, however, a major consideration in our decision is not that Michael *"hasn't been in one place* for an appreciable period of time", *id.* (emphasis added), but that *he has been continually with one parent* for a lengthy period of time. Michael has resided with appellant since the parties' separation in August or September of 1979. For almost four of Michael's first six years, up to the June, 1983 hearing and decision, he was raised and cared for by appellant. That appellant and his son have built a strong bond during the past four years cannot be denied and is a necessary consideration in our decision. Four years ago the lower court felt comfortable giving appellant custody of Michael and reaffirmed its decision at times in appellant's life that it now characterizes as "tentative and unpredictable". Now that appellant's life is stable, as evidenced by the record, and considering the need for continuity in a young child's life we believe that custody should be maintained with appellant.[4]

In sum, our decision is based on the following fundamental conclusions: (1) appellant has ably cared for and nurtured Michael for the majority of the child's life; (2) under appellant's care, Michael has flourished. He is performing well in school and has developed close friendships with peers and with Ms. Frankfort; (3) appellant's once "unset-

---

**4.** We note that the lower court chose to disregard the psychiatrist's opinion because he failed to address appellant's changes in residence and because the report, written in October, 1982, was stale. Contrary to both the lower court and Dr. Rotenberg, we make no judgment about whether one parent is *more* stable than the other. Rather, appellant's current stability leads us to conclude that there has been no change in the parties' circumstances sufficient to warrant a change in custody. This has been especially true since March, 1982, when appellant moved into his current residence. Hence, we note parenthetically that in October, 1982, Dr. Rotenberg did, in fact, have the benefit of observing appellant, appellee, and Michael in their present environments.

tled" life, during which he had custody of Michael, has stabilized and he is more than able to provide a loving, caring environment for Michael; (4) Michael's relationship with appellee, his mother, has grown over the past four years and, with liberal visitation, will continue to prosper. Accordingly, after our independent review of the record and the lower court's concerns, we find that appellee has failed to demonstrate a change in the parties' circumstances sufficient to require a modification of the lower court's original custody order entered in 1980 and subsequently affirmed in 1982.

█ Because of the nature of this case, however, and appellee's excellent relationship with her son, we feel that the custody order must entitle appellee to liberal visitation. Therefore, we reverse the lower court's order and remand for entry of an order consistent with this opinion, including liberal visitation for appellee.

Reversed and remanded.

Jurisdiction relinquished.

BECK, J., concurs in the result.